NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 6

No. 2020-120

| | |
|---|---|
| Ian Baron | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Family Division |
| | |
| Molly McGinty | September Term, 2020 |

Howard E. Van Benthuysen, J.

William Pettersen IV of Pettersen Law PLLC, Colchester, for Plaintiff-Appellant.

Scott R. Bortzfield, St. Albans, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** Ian Baron appeals a magistrate decision declining to register and exercise jurisdiction over his petition to modify a Virginia child-support order. Baron argues that because the requirements of 15B V.S.A. § 1602 and § 1611 were met, the magistrate was required to register and exercise jurisdiction over his petition to modify. We agree, and remand for further proceedings on whether the Virginia child-support order should be modified.

¶ 2. The record indicates the following. Baron and Molly McGinty were married in October 1996 in Utah. The parties separated around July 2015. In October 2016, a Virginia court issued a final divorce decree, which awarded McGinty sole legal and physical custody of the parties' children and ordered Baron to pay child support in the amount of $1757 per month until the children turned eighteen or graduated from high school, whichever occurred later. At the time,

Baron was incarcerated in Virginia, and McGinty was living in Texas. Baron was released from prison shortly thereafter.

¶ 3. About a year later, McGinty asked a Texas court to recognize and enforce the Virginia child-support order. Baron filed an answer of no contest. The Texas court enforced the order and entered judgment against Baron for $21,997.66 based on unpaid child support and accrued interest.

¶ 4. In August 2018, McGinty relocated with the children to Vermont. Baron subsequently petitioned to register and modify the Virginia child-support order in Vermont. He argued that the Virginia court improperly used his pre-incarceration income to calculate his child support obligations and moved to retroactively modify the order as of July 2016. Alternatively, Baron argued that he was entitled to relief from the Virginia order under Vermont Rule of Civil Procedure 60 because the miscalculation of his income was a clerical mistake.

¶ 5. A hearing was held before a magistrate in May 2019.[1] Both parties were represented by counsel. McGinty argued that the Virginia order should be modified in Texas because she was planning to return there on June 15. When asked by the magistrate if she was definitely leaving Vermont, McGinty responded "yes" and confirmed that her date of departure was June 15. Baron responded that he would be prejudiced if the proceedings were moved to Texas because he filed a petition, had done "substantial work" on the matter, and "it would be a reset under Texas law."

¶ 6. At the end of the hearing, the magistrate concluded that Baron was not entitled to relief under Rule 60 because the Virginia child-support order was not based on a clerical mistake.

---

[1] The office of the magistrate is located within the family division of the superior court and has nonexclusive jurisdiction to hear cases arising under the Uniform Interstate Family Support Act. 4 V.S.A. § 461(a)(2).

2

With regard to Baron's petition to modify the child-support order, the magistrate concluded the following:

> [T]he bottom line is the court is declining to exercise jurisdiction in this matter, is not confirming or registering the Virginia order today based upon . . . McGinty's representation that she is moving out of the state, had never intended to remain in the State of Vermont. So the court of the State of Vermont is declining to exercise jurisdiction in this matter and we are not going to rewrite the Virginia, the Texas order, or make any determination as to what the current child support obligation should be in this matter.

Baron filed a motion for reconsideration, which was denied.

¶ 7. Baron appealed directly to this Court. However, 4 V.S.A. § 465 provides that "[a]n appeal from a decision of a magistrate shall be on the record to the Family Division of the Superior Court." We referred the matter to the family division of the superior court pursuant to Vermont Rule of Appellate Procedure 4(a)(5) ("If a notice of appeal is mistakenly filed in the Supreme Court, the Supreme Court clerk will indicate on the notice the date when it was received and forward it the superior court clerk. The notice is considered filed in the superior court on the date so noted.").

¶ 8. The family division affirmed the magistrate's decision on the ground that Baron's petition was moot. The family division explained that as of June 10, 2019, McGinty and the children had relocated to Texas, which meant that the court no longer had personal jurisdiction over McGinty. Without personal jurisdiction, the court reasoned that it could not modify the Virginia child-support order. Baron appealed.

¶ 9. On appeal, Baron argues that because the requirements of 15B V.S.A. § 1602 and § 1611 were met, the magistrate was required to register and exercise jurisdiction over his petition to modify. In addition, Baron argues that he is entitled to modification of the Virginia child-support order because the involuntary loss in his income following his incarceration constitutes a substantial change in circumstances under 15 V.S.A. § 660(a)(1). Alternatively, Baron contends

3

that he is entitled to relief from the Virginia child-support order under Rule 60 because the Virginia court made a mistake in calculating his income and the child-support order is no longer equitable.

¶ 10.    When the family division reviews a magistrate decision, it generally does not act as a factfinder.  Rather, it acts as an appellate body determining "if the tribunal below committed an abuse of discretion."  Gavala v. Claassen, 2003 VT 16, ¶ 7, 175 Vt. 487, 819 A.2d 760 (mem.) (quotation omitted) (holding that Vermont Rule for Family Proceedings 8(g)(4) "authorizes submission of additional evidence upon appeal but only when the record from the magistrate is incomplete and good cause has been shown for its incompleteness" (quotation omitted)); see also In re R.L., 163 Vt. 168, 172, 657 A.2d 180, 183 (1995) ("The family court's only appellate jurisdiction authorized by statute is over decisions from the family court magistrate.").  As an appellate body, "[o]ur review . . . is similar to that of the family division; it is based on the record before the magistrate."  Patnode v. Urette, 2015 VT 70, ¶ 6, 199 Vt. 306, 124 A.3d 430.  "We will neither set aside the magistrate's findings unless they are clearly erroneous, nor its conclusions if reasonably supported by the findings."  Golden v. Worthington, 2020 VT 71, ¶ 7, __ Vt. __, 239 A.3d 259 (quotation omitted).  "We review the legal conclusions of the magistrate and the family division de novo."  Merchant v. Merchant, 2015 VT 72, ¶ 7, 199 Vt. 406, 124 A.3d 443.

¶ 11.    We conclude that the magistrate correctly determined that Baron was not entitled to relief from the Virginia child-support order under Rule 60.  We further conclude that the magistrate erred in declining to register and exercise jurisdiction over Baron's petition to modify.

## I.  Relief from Judgment

¶ 12.    Baron argues that he is entitled to relief from the Virginia child-support order under Rule 60 because the Virginia court made a clerical mistake—namely, using his pre-incarceration income to calculate his child-support obligations.  Alternatively, Baron argues that he is entitled to relief because the child-support order is no longer equitable.

4

¶ 13.   Rule 60(b) provides that upon motion, a court may relieve a party from final judgment based upon a "mistake" or because "it is no longer equitable that the judgment should have prospective application."  V.R.C.P. 60(b).  The magistrate concluded that Baron was not entitled to relief under Rule 60(b) because the Virginia order was not based on a clerical mistake.[2] "A motion for relief from judgment pursuant to Rule 60(b) is addressed to the discretion of the trial court and is not subject to appellate review unless it clearly and affirmatively appears from the record that such discretion was withheld or otherwise abused."  In re P.K., 2017 VT 3, ¶ 12, 204 Vt. 102, 164 A.3d 665 (quotation omitted).  "Whether the court has authority to exercise its discretion under Rule 60(b) is a legal issue that we review de novo."  Brandt v. Menard, 2020 VT 61, ¶ 3, __ Vt. __, 237 A.3d 1251 (quotation and alteration omitted).

¶ 14.   We affirm the magistrate's conclusion that Baron was not entitled to relief under Rule 60(b); although, we affirm based on a different rationale.  Wharton v. Tri-State Drilling & Boring, 2003 VT 19, ¶ 13, 175 Vt. 494, 824 A.2d 531 (mem.) ("We will affirm a judgment even if the grounds stated in its support are erroneous as long as the result is the same under the correct law and reasoning.").  The Uniform Interstate Family Support Act (UIFSA) delineates under what circumstances the family division[3] may modify a child-support order issued in another state, and it does not authorize the family division to grant relief from a child-support order issued in another state under Rule 60(b).

¶ 15.   "UIFSA was designed to expedite the interstate enforcement of child support orders through uniform procedures."  Office of Child Support ex rel. Lewis v. Lewis, 2004 VT 127, ¶ 11, 178 Vt. 204, 882 A.2d 1128.  Its primary aim "is to ensure that states do not second-guess the

_____

   [2]  In ruling on the merits of Baron's Rule 60(b) motion, the magistrate exercised subject matter jurisdiction in regard to the Virginia order, which was inconsistent with its refusal to exercise jurisdiction over the petition to modify.

   [3]  When discussing the authority of the family division under UIFSA, we use "family division" to refer to both the family division itself and the office of the magistrate.

support orders of other states, thereby opening the door to forum shopping and the proliferation of conflicting orders." OCS/Glenn Pappas v. O'Brien, 2013 VT 11, ¶ 29, 193 Vt. 340, 67 A.3d 916. In pursuit of this goal, UIFSA establishes, as a "paramount" rule, that only one support order can be in effect at once. 15B V.S.A. § 1611, Uniform Law Comments. To ensure that there is only one support order, § 1611 outlines the circumstances when the family division may "modify a child support order issued in another state." Id. § 1611(a)(1)-(2).

¶ 16. It is true that § 1104 recognizes that the remedies provided by UIFSA are "cumulative" and do not "provide the exclusive method of establishing or enforcing a support order under the law of this State." Id. § 1104(a)-(b)(1). The comments to the Uniform Act elaborate that "[t]he existence of procedures for interstate establishment, enforcement, or modification of support . . . does not preclude the application of the general law of the forum." Id. Uniform Law Comments. However, the comments further clarify that "[o]nce a child-support order has been issued, this option is no longer available to interstate parties." Id. UIFSA dictates that "in further litigation the tribunal must apply the act's provisions for enforcement of an existing order and limit modification to the strict standards of UIFSA." Id.

¶ 17. Consistent with the purposes of UIFSA, if the requirements of § 1611 are met, the family division has authority to "modify a child support order issued in another state." Id. § 1611(a) (emphasis added). It does not have authority to grant relief under Rule 60(b). Permitting the family division to grant relief under Rule 60(b) would allow Vermont to "second-guess the support orders of other states" in direct contravention of UIFSA's goal of establishing uniform procedures for the interstate enforcement of child-support orders. O'Brien, 2013 VT 11, ¶ 29.

## II. Modification

¶ 18. The remaining question is whether the magistrate erred in declining to register and exercise jurisdiction over Baron's petition to modify. We begin with a brief overview of the provisions of UIFSA. Under UIFSA, modification of a child-support order issued in another state

6

is a two-step process. First, the party seeking modification must register the order in Vermont in accordance with 15B V.S.A. § 1602(a). "On receipt of a request for registration, the [family division] shall cause the order to be filed as an order of another state . . . ." Id. § 1602(b); see also id. § 1606 (providing procedure for "nonregistering party seeking to contest the validity or enforcement of a registered support order in this State"). Once an order is registered, the family division may modify it, provided § 1613 does not apply and "after notice and hearing, it finds" that "(A) neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state; (B) a petitioner who is a nonresident of this State seeks modification; and (C) the respondent is subject to the personal jurisdiction of the tribunal of this State." Id. § 1611(a)(1)(A)-(C); see also id. § 1613 (outlining procedure for modification when "all of the parties who are individual reside in this State and the child does not reside in the issuing state").

¶ 19.  Here, the magistrate declined to register or exercise jurisdiction over Baron's petition to modify based on McGinty's representation that she was moving out of the state and had never intended to remain in Vermont. Baron argues that because the requirements of 15B V.S.A. § 1602 and § 1611 were met, the magistrate was required to exercise jurisdiction over his petition to modify.

¶ 20.  We hold that, absent a finding that a request for registration does not comply with § 1602, the family division has no discretion to decline to register an order. Similarly, we hold that when the requirements of § 1611 are met, the family division cannot decline to exercise jurisdiction. Based on these standards, we conclude that the magistrate erred in declining to register and exercise jurisdiction over Baron's petition to modify.

A.  Mootness

¶ 21.  Although we are reviewing the magistrate's and not the family division's decision on appeal, see Patnode, 2015 VT 70, ¶ 6, we must address as a threshold issue the family division's conclusion that Baron's petition was moot. "The mootness doctrine derives its force from the

7

Vermont Constitution, which, like its federal counterpart, limits the authority of the courts to the determination of actual, live controversies between adverse litigants." Houston v. Town of Waitsfield, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.) (quotation omitted). "A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case." Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1011. Even if "there was once an actual controversy, a change in the facts can render an issue or entire case moot." In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991).

¶ 22.    Here, the family division concluded that a change in facts rendered Baron's petition moot—namely, that McGinty and the children moved to Texas as of June 10, 2019. According to the court, McGinty's move to Texas made Baron's petition moot because the court no longer had personal jurisdiction over McGinty. The family division's analysis overlooks the well-established principle that once a court obtains personal "jurisdiction over a party to an action, the jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action." Restatement (Second) of Conflict of Laws § 26 (1971); see also id. cmt. a (explaining that although basis for personal jurisdiction "must exist at the initiation of the proceeding[,] it need not continuously do so thereafter"); Barker v. Barker, 757 S.E.2d 42, 44 (Ga. 2014) ("[I]t is well established that once a court obtains personal jurisdiction over a party in an action, jurisdiction over the party continues for subsequent proceedings that arise out of that action." (quotation omitted)).

¶ 23.    Based on this principle of continuing personal jurisdiction, McGinty's subsequent move to Texas did not affect whether she was subject to personal jurisdiction in Vermont. She consented to personal jurisdiction because she made a general appearance before the magistrate. See 15B V.S.A. § 1201(a)(2) (providing that an individual consents to jurisdiction by making a general appearance); accord Yanmar Am. Corp. v. Crean Equip. Co., 2012 VT 35, ¶¶ 7-8, 191 Vt.

620, 48 A.3d 602 (mem.). She is accordingly subject to personal jurisdiction in Vermont for the "subsequent proceedings" that arise out of Baron's petition to modify the Virginia order. Restatement (Second) of Conflict of Laws § 26, cmt. b, illus. 2 (1971) (explaining that personal jurisdiction continued through appeal and second trial, even though defendant left state prior to appeal and no basis existed "for an original exercise of . . . jurisdiction over [him] either at the time of the appeal or at the time of the second judgment.").

## B. Merits

¶ 24.    Moving to the merits, the magistrate declined to register or exercise jurisdiction over Baron's petition because McGinty testified that she was moving out of the state and had never intended to remain in Vermont.    Baron argues that the magistrate was required to exercise jurisdiction over his petition because the Virginia order was registered in Vermont pursuant to § 1602 and the requirements of § 1611 were met.  We address each in turn.

### 1. Registration

¶ 25.    To modify a child-support order issued in another state, the party seeking modification must first register the order in Vermont in accordance with 15B V.S.A. § 1602(a). "On receipt of a request for registration, the [family division] shall cause the order to be filed as an order of another state . . . ."  Id. § 1602(b).  The "order is registered when [it] is filed in the [family division]."  Id. § 1603(a).  When a support order is registered, the family division "must notify the nonregistering party."  Id. § 1605(a).  The nonregistering party may then contest the registration by requesting a hearing within twenty days.  Id. §§ 1605(b)(2), 1606(a).  "If the nonregistering party fails to contest the validity or enforcement of the registered support order in a timely manner, the order is confirmed by operation of law."  Id. § 1606(b).

¶ 26.    Here, the magistrate had no discretion to decline to register the Virginia child-support order—§ 1602(b) provides that on receipt of the request for registration, the family division "shall cause the order to be filed."  "Use of the word 'shall' in a statute generally means

9

that the action is mandatory, as opposed to directory." Town of Victory v. State, 174 Vt. 539, 544, 814 A.2d 369, 376 (2002) (mem.). Unless Baron's petition to modify did not comply with the requirements of § 1602—which the magistrate did not find—the order was registered as of February 22, 2019, the date the order was filed in the family division. Furthermore, because McGinty, the nonregistering party, did not contest the registration, it was "confirmed by operation of law." 15B V.S.A. § 1606(b).

## 2. Modification

¶ 27. Once an order is registered, the family division "may modify a child support order issued in another state" provided § 1613 does not apply and "after notice and hearing, it finds" that "(A) neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state; (B) a petitioner who is a nonresident of this State seeks modification; and (C) the respondent is subject to the personal jurisdiction of the tribunal of this State." Id. § 1611(a)(1)(A)-(C).

¶ 28. Here, the record indicates the requirements of § 1611(a) were met. First, neither the children, nor McGinty, nor Baron, resided in Virginia, the issuing state. Second, Baron, the petitioner, was not a resident of Vermont. Third, as discussed, supra, ¶¶ 22-23, McGinty was, and still is, subject to personal jurisdiction in Vermont.

¶ 29. Notwithstanding that the requirements of § 1611 were met, the magistrate "declined to exercise jurisdiction" for the purposes of modification because McGinty was planning to return to Texas. We conclude that the family division has no authority to decline to exercise subject matter jurisdiction when the requirements of § 1611 are met. " 'Subject matter jurisdiction' refers to the power of a court to hear and determine a general class or category of cases." Quinlan v. Five-Town Health All., Inc., 2018 VT 53, ¶ 27, 207 Vt. 503, 192 A.3d 390 (quotation omitted). Because "the jurisdiction of the trial courts is shaped by the legislature," In re Mountaintop Inn & Resort, 2020 VT 57, ¶ 24, __ Vt. __, 238 A.3d 637 (quotation omitted) (alteration omitted), subject

10

matter jurisdiction is a question of statutory interpretation, In re Hinsdale Farm, 2004 VT 72, ¶ 5, 177 Vt. 115, 885 A.2d 249.

¶ 30. "Our primary objective in construing a statute is to effectuate the Legislature's intent." Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (quotation omitted). "In interpreting a statute, we look to the statute's plain meaning . . . ." Kapusta v. Dep't of Health/Risk Mgmt., 2009 VT 81, ¶ 8, 186 Vt. 276, 980 A.2d 236. If the plain language is ambiguous, "we consider the entirety of the statute, its effects and consequences, and the reason and spirit of the law to determine its true meaning." In re D'Antonio, 2007 VT 100, ¶ 7, 182 Vt. 599, 939 A.2d 493 (mem.) (quotation omitted).

¶ 31. Because subject matter jurisdiction refers to the "power of a court to hear and determine a general class or category of cases," Quinlan, 2018 VT 53, ¶ 27 (quotation omitted), a court either has subject matter jurisdiction or it does not. In some limited circumstances, however, the Legislature has given courts the discretion to decline to exercise jurisdiction. See, e.g., 15 V.S.A. § 1077(a) ("A Vermont court which has jurisdiction . . . to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum . . . .").

¶ 32. There is no indication that the Legislature intended to give the family division discretion to decline jurisdiction under § 1611. The plain language of § 1611 indicates that the family division has discretion as to whether to modify, not discretion to decline jurisdiction. See 15B V.S.A. § 1611(a) (providing that the family division "may modify a child support order issued in another state" if it finds that the requirements of § 1611 are met (emphasis added)); Vt. Nat'l Tel. Co. v. Dep't of Taxes, 2020 VT 83, ¶ 55, __ Vt. __, __ A.3d __ (explaining that word "may" indicates discretion). In sum, under § 1611, the family division has no discretion to decline to exercise jurisdiction if the statutory conditions are met.

11

¶ 33. Furthermore, the reason the magistrate gave for declining jurisdiction—that McGinty never intended to remain in Vermont and was planning to return to Texas—is not a relevant consideration in assessing whether the family division has jurisdiction to modify under § 1611. Unlike other provisions of UIFSA, § 1611 does not require the respondent to be domiciled in Vermont for the family division to have jurisdiction to modify a child-support order of another state. Cf. 15B V.S.A. § 1613(a) ("If all of the parties who are individuals reside in this State and the child does not reside in the issuing state, a tribunal of this State has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order.").

¶ 34. In sum, the magistrate did not have discretion to decline to register or exercise jurisdiction over Baron's petition to modify. Registration is automatic when the requirements of § 1602 are met, and § 1611 does not provide the family division with discretion to decline to exercise jurisdiction if the requirements of that section are met. We accordingly remand to the family division to consider whether the Virginia child-support order should be modified pursuant to 15 V.S.A. § 660.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

Associate Justice

12